# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN BAGENT, | CASE NO. 1:07-cv-01687-AWI-SKO |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSAL OF CLAIMS, WITHOUT LEAVE TO AMEND |
| v. | |
| STEPHEN MAYBERG, et al., | OBJECTIONS DUE WITHIN 30 DAYS |
| Defendants. / | |

Plaintiff John Bagent ("Plaintiff") is a civil detainee proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff is currently housed in Coalinga State Hospital in Coalinga, California. Plaintiff is suing under Section 1983 for the violation of his rights under the Fourteenth Amendment. Plaintiff's complaint describes numerous procedural deficiencies in the proceedings that resulted in his continued civil detainment. Plaintiff names Steven Mayberg (executive director, California Department of Mental Health, hereinafter "CDMH"), Robert Owen ("SVP Evaluator," CDMH), Nancy Rueschenberg ("SVP Evaluator," CDMH), Marc C. Patterson ("SVP Evaluator," CDMH), and Steven R. Jenkins ("SVP Evaluator," CDMH) as defendants. For the reasons set forth below the Court finds that Plaintiff fails to state any cognizable claims and will recommend that Plaintiff's claims be dismissed without leave to amend.

**I.      Screening**

Plaintiff is proceeding in forma pauperis in this action. Under 28 U.S.C. § 1915(e)(2), the Court shall dismiss any action brought in forma pauperis at any time if the Court determines that the

1  action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks
2  monetary relief against a defendant who is immune from such relief.
3       In determining whether a complaint fails to state a claim, the Court uses the same pleading
4  standard used under Federal Rule of Civil Procedure 8(a).  Under Rule 8(a), a complaint must
5  contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.
6  R. Civ. P. 8(a)(2).  "[T]he pleading standard Rule 8 announces does not require 'detailed factual
7  allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me
8  accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v.
9  Twombly, 550 U.S. 544, 555 (2007)).  "[A] complaint must contain sufficient factual matter,
10 accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550
11 U.S. at 570).  "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's
12 liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id.
13 (quoting Twombly, 550 U.S. at 557).  Further, although a court must accept as true all factual
14 allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true.
15 Id.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory
16 statements, do not suffice." Id. (quoting Twombly, 550 U.S. at 555).

**II.  Background**

    **A.  Procedural Background**

Plaintiff filed the original complaint in this action on November 21, 2007.  (Doc. #1.)  On January 22, 2009, Plaintiff requested leave to file a first amended complaint.  (Doc. #10.)  The Court granted Plaintiff's request and Plaintiff filed his "Second Amended Complaint" on April 30, 2009.[1] (Doc. #14.)  The Court screened Plaintiff's "Second Amended Complaint" on October 9, 2009.  (Doc. #16.)  The Court found that Plaintiff's "Second Amended Complaint" failed to state any cognizable claims and dismissed it with leave to file a "Third Amended Complaint" within 30 days.

---

[1] The amended complaint is titled "Second Amended Complaint," despite the fact that Plaintiff never filed a "First Amended Complaint."  The Court also refers to the complaint as a "Second Amended Complaint" in the October 9, 2009 screening order.  The complaint currently before the Court is titled "Third Amended Complaint."  In order to avoid future confusion, the Court will simply refer to the pleadings as they are titled and note that there was never a "First Amended Complaint" filed in this action.

Plaintiff filed his "Third Amended Complaint" on November 19, 2009. (Doc. #19.) This action proceeds on Plaintiff's "Third Amended Complaint."

### B. Factual Background

#### 1. Plaintiff's Allegations

Plaintiff claims that Defendants violated his rights under the Due Process Clause of the Fifth and Fourteenth Amendments. Plaintiff also claims that Defendants violated his rights under the Equal Protection Clause of the Fourteenth Amendment. Plaintiff seeks monetary damages, injunctive relief, and declaratory relief. Plaintiff contends that the proceedings that caused and will continue to cause his continued civil confinement are unconstitutional.

Defendant Stephen Mayberg is the director of CDMH. Plaintiff claims that Mayberg was responsible for establishing the policies, practices, and procedures with respect to Plaintiff's civil detainment proceedings. Defendants Owen, Reuschenberg, Petterson, and Jenkins are contract psychologists who evaluated Plaintiff for the purposes of determining whether Plaintiff meets the criteria for continued involuntary civil confinement pursuant to California's Sexually Violent Predator Act ("SVPA").

Plaintiff complains that Defendants relied on improper evidence and failed to consider relevant evidence when rendering their diagnosis of Plaintiff. Plaintiff complains that Owen, Reuschenberg, Patterson, and Jenkins "impermissibly counted, for purpose[sic] of scoring the STATIC 99 risk assessment actuarial, offenses which were dismissed by the courts, and non-enumerated offenses, all of which is contrary to CDMH's written directives." (Third Am. Civil Rights Compl. 10:9-12, ECF No. 19.[2]) Plaintiff contends that these offenses were impermissibly considered when Defendants rendered their diagnosis of Plaintiff. Plaintiff complains that Owen, Reuschenberg, Patterson, and Jenkins failed to consider Plaintiff's health and age when assessing Plaintiff's risk of re-offending. Plaintiff complains that Owen, Reuschenberg, Patterson, and Jenkins

---

[2] Citations to Plaintiff's complaint refer to the page numbers as the complaint is electronically docketed. Plaintiff's page numbering differs because Plaintiff did not number the first six pages of his form complaint.

1  erroneously concluded that Plaintiff was not amenable to treatment outside a secure environment.
2  Plaintiff also complains that Owen, Reuschenberg, Patterson, and Jenkins failed to mention
3  Plaintiff's "level of dangerousness" in their reports.  Additionally, Plaintiff complains that they
4  erroneously concluded that Plaintiff's sex offenses occurred as a result of a lack of volitional control;
5  he argues that his sex offenses were determined to have been committed willfully and, therefore, did
6  not occur due to lack of volitional control.

7        Plaintiff also complains that he was denied to the right to have his voice recorded during his
8  psychological interviews.  Plaintiff contends that the failure to record his voice deprived Plaintiff of
9  the right to be heard at his evaluations.  Plaintiff argues that the failure to provide voice recordings
10 allowed Defendants to "freely create fiction, and present false information under the guise of
11 statements that were made by the plaintiff or to alter the context of those statements thus sacrificing
12 plaintiff's constitutional right to due process."  (Third Am. Civil Rights Compl. 11:5-20, ECF No.
13 19.)

14       Plaintiff further contends that the psychological evaluators are biased because CDMH has
15 an unwritten policy of dismissing evaluators "who openly opine that it is not possible to accurately
16 predict which interviewees will reoffend."  (Third Am. Civil Rights Compl. 11:21-23, ECF No. 19.)
17 Plaintiff also argues that evaluators earn a large income that prejudices Plaintiff's ability to receive
18 a fair evaluation because evaluators do not want to be dismissed.  Plaintiff contends that "without
19 this income, the average psychologist, if lucky, will earn roughly the income of a typical factory
20 worker."  (Third Am. Civil Rights Compl. 13:21-23, ECF No. 19.)

21       Plaintiff also complains that under CDMH policy, patients such as Plaintiff are rarely given
22 a favorable determination during their evaluations if they have not completed "all five phases of
23 treatment."  (Third Am. Civil Rights Compl. 12:4-11, ECF No. 19.)  Plaintiff complains that there
24 is no evidence that supports the conclusion that completion of the five stage "Phase Treatment"
25 program reduces recidivism rates.

26       **2.    The Sexually Violent Predators Act**

27       Plaintiff provides scant detail regarding the full extent of the civil commitment proceedings
28 under the SVPA.  Accordingly, the Court takes judicial notice of the SVPA in order to understand

4

the full scope of the procedures used to detain persons such as Plaintiff and to evaluate Plaintiff's due process claims. Plaintiff has not alleged that CDMH deviated from the procedures set forth in the SVPA in any substantial manner and, therefore, the Court assumes that the following procedures were used to civilly detain Plaintiff.[3] The SVPA sets forth two distinct processes: 1) the original commitment hearings and evaluations that result in an individual's civil commitment; and 2) the post-commitment hearings and evaluations that determine whether the individual should continue to be detained or whether the individual should be released.

### i. Original Commitment Hearing and Evaluations

The relevant procedures used to civilly detain sexually violent predators in the state of California are codified in Sections 6600 through 6609.3 of the California Welfare and Institutions Code. Under Section 6601, the California Department of Corrections and Rehabilitation can refer an inmate that may be a sexually violent predator for an evaluation. Cal. Welf. & Inst. Code § 6601(a)(1). After an initial screening, the individual is referred to CDMH for a full evaluation to determine whether the individual meets the criteria set forth in Section 6600. Cal. Welf. & Inst. Code § 6601(b)-(c). The individual is examined by two psychiatrists or psychologists and if both professionals agree that the individual has a diagnosed mental disorder such that he or she is likely to engage in acts of sexual violence without appropriate treatment, the CDMH forwards a request for a petition for commitment under Section 6602. Cal. Welf. & Inst. Code § 6601(d). The county that receives the request may file a petition for commitment in the state superior court. Cal. Welf. & Inst. Code § 6601(I).

A judge from the superior court reviews the petition and determines whether there is probable cause to believe that the individual is likely to engage in sexually violent predatory criminal behavior upon his or her release. Cal. Welf. & Inst. Code § 6602(a). At the probable cause hearing, the individual is entitled to the assistance of counsel. Id. If there is probable cause, a trial is conducted to determine whether the individual is a danger to the health and safety of others by reason of a

---

[3] Plaintiff does complain that CDMH failed to use the same evaluator when evaluating Plaintiff, which is "preferred" under the SVPA. It is unclear how this deviation is significant. As discussed below, the role of the evaluator in post-commitment evaluations is not dispositive of whether Plaintiff's commitment will continue. See discussion infra Part III.B.

5

diagnosed mental disorder and is likely to engage in acts of sexual violence upon release. Id. The individual is entitled to the assistance of counsel, the right to retain experts or professional persons to perform an examination on his or her behalf, and the right to have access to all relevant medical and psychological records and reports. Cal. Welf. & Inst. Code § 6603(a). Indigent individuals have the right to appointed counsel and assistance in obtaining an expert or professional to perform an examination. Id. Individuals also have a right to demand a trial by jury. Cal. Welf. & Inst. Code § 6603(b). A unanimous verdict is required in any jury trial. Cal. Welf. & Inst. Code § 6603(f). The relevant burden of proof that must be met is whether the individual, beyond a reasonable doubt, is a sexually violent predator. Cal. Welf. & Inst. Code § 6604.

### ii.     Post-Commitment Hearings and Evaluations

A person civilly committed under the SVPA is committed to an indeterminate term. Cal. Welf. & Inst. Code § 6604-6604.1. While confined, "[t]he person shall be evaluated by two practicing psychologists or psychiatrists, or by one practicing psychologist and one practicing psychiatrist, designated by the State Department of Mental Health." Cal. Welf. & Inst. Code § 6604.1. Additionally, the provisions of Section 6601(c)-(i) and the rights, requirements, and procedures set forth in Section 6603 "shall apply to all commitment proceedings."

Under the SVPA, a person who has been found to be a sexually violent predator "shall have a current examination of his or her mental condition made at least once every year." Cal. Welf. & Inst. Code § 6605(a). The examination includes consideration of whether the committed person currently meets the definition of a sexually violent predator and whether conditional release to a less restrictive alternative or an unconditional release is in the best interest of the person. Id. If it is determined that the person is no longer a sexually violent predator, or that conditional release to a less restrictive alternative is in the best interest of the person, the director of CDMH shall authorize the person to petition the court for conditional release or unconditional discharge. Cal. Welf. & Inst. Code § 6605(b).

However, even if CDMH fails to recommend Plaintiff for conditional release or unconditional discharge, under Section 6608, a detainee may directly petition the court "for conditional release or an unconditional discharge without the recommendation or concurrence of the

Director of Mental Health." Id. "The person petitioning for conditional release and unconditional discharge under this subdivision shall be entitled to the assistance of counsel." Id. A petition in this manner is somewhat more restrictive because if the individual had previously filed a petition for conditional release without CDMH's recommendation, and the court determined that the previous petition was frivolous or the individual's condition has not so changed that he or she would not be a danger to others, the Court may deny the subsequent petition "unless it contains facts upon which a court could find that the condition of the committed person had so changed that a hearing was warranted." Cal. Welf. & Inst. Code § 6608(a). Further, upon the receipt of a first or subsequent petition filed without CDMH's recommendation, the Court may deny the petition without a hearing if it determines that the petition is based on frivolous grounds. Id. If a hearing is held and the court determines that the individual would not be a danger to others, the individual is placed in a forensic conditional release program for at least one year and then re-evaluated by the court for unconditional release. Cal. Welf. & Inst. Code § 6608(d). In any hearing under Section 6608, "the petitioner shall have the burden of proof by a preponderance of the evidence." Cal. Welf. & Inst. Code § 6608(i).

## III. Discussion

### A. Applicability of Heck v. Humphrey to Plaintiff's Claims

As the Court explained in its previous screening order, Plaintiff's claims for damages are barred by the favorable termination rule set forth in Heck v. Humphrey, 512 U.S. 477 (1994). As stated by the Supreme Court:

> [W]hen a state prison seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

Heck, 512 U.S. at 487. The Ninth Circuit has held that Heck's favorable termination rule applies to civil detainees who are challenging the validity of their commitment pursuant to the SVPA. Huftile v. Miccio-Fonseca, 410 F.3d 1136, 1140-41 (9th Cir. 2005).

Plaintiff's complaint is not clear as to which procedures under the SVPA he is challenging. It is unclear whether he is challenging the original commitment hearing and the associated

professional evaluations (the procedures set forth in Cal. Welf. & Inst. Code § 6601-6604), or whether he is challenging the post-commitment hearings and evaluations (the procedures set forth in Cal. Welf. & Inst. Code § 6605 and 6608). The Court finds that Plaintiff's claims for damages based on his original commitment hearing are barred by Heck.

Plaintiff's challenge to his original commitment hearing and evaluations would necessarily imply the invalidity of his civil commitment. Plaintiff's claims are similar to the claims analyzed in Huftile. In Huftile, plaintiff sought damages against a psychological evaluator for failing to follow proper procedures when conducting interviews, fabricating reports, and relying on unreliable data when preparing the evaluation that recommended Huftile's continued commitment. The Ninth Circuit stated that "the structure of the SVPA statutory scheme indicates that the success of Huftile's § 1983 claim would necessarily imply the invalidity of his civil commitment." 410 F.3d at 1140-41. The Court concluded that Plaintiff's claims against one of his evaluators would necessarily imply the invalidity of his civil commitment because "if only one evaluator, rather than two, had concluded that Huftile had a 'mental disorder' within the meaning of § 6602(d), there would have been no basis for the state Director of Mental Health to send the request" to file a petition for commitment and Plaintiff would not have been committed. Similarly, Plaintiff's claims here against numerous evaluators would have had the same effect of negating their recommendation and there would have been no basis to file a petition for commitment. Thus, Plaintiff's claims for damages are barred by Heck.

It is unclear whether Heck would bar Plaintiff's claims based on his post-commitment hearings and evaluations, as it is unclear whether success on the merits of those claims would necessarily imply the invalidity of Plaintiff's commitment. However, as discussed below, the Court finds that Plaintiff's claims regarding his post-commitment hearings and evaluations fail to state a claim under Section 1983.

**B.     Claims Based on Post-Commitment Hearings and Evaluations**

The Ninth Circuit explicitly left open the possibility of raising a claim for prospective relief to prevent future injury because such claims are not barred by Heck. Thus, Heck left open the possibility of Plaintiff raising a claim for prospective relief to prevent future injury caused by future

8

post-commitment hearings and evaluations. Further, it is unclear whether Heck would bar Plaintiff's claims regarding any post-commitment hearings and evaluations that occurred in the past. However, regardless of whether or not Plaintiff's claims are barred by Heck, the Court finds that Plaintiff's claims fail as a matter of law because Plaintiff fails to state any cognizable claims.

### 1. Due Process Claims

Plaintiff claims that the proceedings that resulted in his continued confinement violate the Due Process Clause of the Fourteenth Amendment. "[C]ivil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." Addington v. Texas, 441 U.S. 418, 425 (1979). "[I]n certain narrow circumstances," states may "provide[] for the forcible civil detainment of people who are unable to control their behavior and who thereby pose a danger to the public health and safety." Kansas v. Hendricks, 521 U.S. 346, 357 (1997). Statutes providing for involuntary civil commitment have been "consistently upheld . . . provided the confinement takes place pursuant to proper procedures and evidentiary standards." Id. (holding that the Kansas Sexually Violent Predator Act comports with due process requirements).

The Court finds that the post-commitment procedures set forth in the SVPA do not violate the Due Process Clause of the Fourteenth Amendment. Plaintiff alleges that the CDMH evaluators used unreliable evidence, failed to consider evidence favorable to Plaintiff, and made erroneous factual conclusions in support of their assessment that Plaintiff should not be released from civil detainment. Plaintiff also complains that his voice is not recorded during the evaluations and contends that the evaluators are biased.[4]

In civil commitment hearings, the factors relevant in determining whether an individual has been afforded sufficient procedural protections under the due process clause are whether the individual received: 1) written notice; 2) a hearing at which the evidence being relief upon for the commitment is disclosed to the prisoner; 3) an opportunity at the hearing for the prisoner to be heard

---

[4] he Court notes that Plaintiff's allegations of impartiality are not adequately supported by any plausible factual allegations. Plaintiff's conclusions are based on the rather outlandish claim that the psychologists and psychiatrists contracted with CDMH, "if lucky," would make wages comparable to a "typical factory worker." Plaintiff also claims that CDMH manipulates evaluators by firing psychologists and psychiatrists who are likely to recommend release. Plaintiff also fails to offer any theory as to why CDMH has any incentive to prevent detainees from being released.

in person, to present testimony and documentary evidence, and to cross-examine witnesses called by the State; 4) an independent decision-maker; 5) reasoned findings of fact; 6) legal counsel; and 7) effective and timely notice of these rights. See Vitek v. Jones, 445 U.S. 480, 494-97 (1980); Carty v. Nelson, 426 F.3d 1064, 1074 (9th Cir. 2005). Plaintiff has not alleged that he was deprived of any of these procedural protections.

The deficiencies alleged on the part of the evaluators do not rise to the level of a due process violation. The evaluators are not the ultimate decision makers who decide whether Plaintiff should continue to be detained. Under the SVPA's scheme, a superior court judge is the ultimate decision maker. The SVPA scheme permits Plaintiff to file a petition in state court for conditional or unconditional release without the recommendation of the evaluators or CDMH. Thus, even if Plaintiff's allegations are proven true and the evaluators hired by CDMH are acting impartially and are relying in improper evidence, the alleged impropriety is of little consequence because Plaintiff can file a petition for release directly to the court and would be entitled to the assistance of an attorney and will have an opportunity to present evidence before a state judge in support of his contention that he is no longer a sexually violent predator within the definition of the SVPA. Presumably, within the petition itself and at any subsequent hearing, Plaintiff will have the opportunity to present evidence in support of his contention that the evaluators' opinions are not worthy of consideration because of their biases. In other words, the SVPA scheme provides for sufficient procedural mechanisms for Plaintiff to challenge the evaluators' conclusions and provides Plaintiff with the opportunity to prove by a preponderance of evidence in a hearing before a state court judge that he no longer qualifies for civil detainment. The Court finds that the procedural protections provided by California's SVPA do not violate due process. See Robinson v. Mayberg, No. 09CV346-IEG(POR), 2010 WL 2196564, at *7 (S.D. Cal, May 27, 2010) ("the procedures for judicial review, set forth in Cal. Welf. & Inst. Code §§ 6605 and 6608, are sufficient to insure that Petitioner's confinement will not continue beyond the point when he no longer suffers from a mental disorder or is no longer dangerous").

Given the SVPA's scheme for obtaining release from civil confinement, Plaintiff has failed to provide a clear explanation of how he suffered any injury as a result of the evaluators' alleged

biases and consideration of improper evidence. Even if the Court were to assume that the evaluators consistently concluded that Plaintiff was unfit for conditional or unconditional release[5], that did not foreclose Plaintiff's chance for release. Plaintiff could have utilized the procedures outlined under Section 6608 to challenge the evaluators' conclusions. If Plaintiff believed that the evidence used by the evaluators was unreliable, they failed to consider relevant evidence, their conclusions were wrong, they were biased, or the actuarial assessment methodologies used were unreliable, Section 6608 provides ample opportunity for Plaintiff to file a petition in state court and present evidence in support of his contentions. Plaintiff fails to offer any argument as to why the procedural protections offered by 6608 are constitutionally insufficient to protect Plaintiff's liberty interests. Plaintiff's factual allegations fail to support a cognizable claim under the Due Process Clause.

**2.    Plaintiff's Fifth Amendment Claims and Equal Protection Claims**

Plaintiff also alleges that Defendants violated the Due Process Clause of the Fifth Amendment. "[T]he Fifth Amendment's due process clause applies only to the federal government." Bingue v. Prunchak, 512 F.3d 1169, 1174 (9th Cir. 2008). Plaintiff is suing state government officials, not federal government officials. Therefore, the Fourteenth Amendment's Due Process Clause is the only relevant source of due process protection for Plaintiff's claims.

Plaintiff also alleges that Defendants violated Plaintiff's equal protection rights. However, Plaintiff fails to explain how Defendants' actions implicate the Equal Protection Clause and there is no obvious equal protection claim arising from Plaintiff's factual allegations. The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985). In other words, the Equal Protection Clause prohibits the state from discriminating against Plaintiff. Plaintiff has not alleged that he has been discriminated against or that he was treated differently from other persons who were similarly situated. Plaintiff fails to state a cognizable claim under the Equal Protection Clause.

**C.    Dismissal Without Leave to Amend**

The Court previously dismissed Plaintiff's Second Amended Complaint with leave to amend

---

[5] Plaintiff never alleges what the evaluators' ultimate conclusions were.

and informed Plaintiff of the deficiencies in his claims. Plaintiff's Third Amended Complaint is nearly identical to his Second Amended Complaint. Plaintiff has failed to amend his complaint in any meaningful way that addresses the deficiencies previously identified by the Court. Accordingly, the Court will recommend that Plaintiff's complaint be dismissed without leave to amend. See Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2007) (recognizing longstanding rule that leave to amend should be granted even if no request to amend was made unless the court determines that the pleading could not possibly be cured by the allegation of other facts); Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992)(dismissal with prejudice upheld where court had instructed plaintiff regarding deficiencies in prior order dismissing claim with leave to amend); Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987) (pro se litigant must be given leave to amend his or her complaint unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment).

## IV.   Conclusion and Recommendation

Plaintiff's Third Amended Complaint fails to state any cognizable claims. Plaintiff was provided with the opportunity to amend and his Third Amended Complaint failed to remedy the deficiencies in his claims. The court finds that the deficiencies in Plaintiff's claims are not curable by further amendment of his complaint. Accordingly, it is HEREBY RECOMMENDED that Plaintiff's claims be dismissed for failure to state a claim, without leave to amend.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty (30) days after being served with these Findings and Recommendations, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten (10) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   September 8, 2010            /s/ Sheila K. Oberto**
                                              UNITED STATES MAGISTRATE JUDGE